Good morning. My name is Peter Volk. I'm the federal defender in Hawaii. With me is Mr. Nishimura. Mr. Nishimura represents Mr. Dandeson and Mr. Watson. We submitted two briefs. Our cases are the same. The only difference is that Watson was cited for the 924C, count 6, and Dandeson, the diamond, with the same credit card robbery for the 924C from count 7. And so there's no material distinction between them. So with 10 minutes, we're not going to try to divide it up. So the case presents a couple of questions about the application of a categorical analysis to the credit card robbery in a 924C case. So I think I would start by saying that our position is that the residual clause of 924C should be considered by this Court to be a judge letter given the precedent in Johnson and given this Court's decision in DiMaio. Even if that was David Beckles, in 924C, you have the residual clause. You can hear this. I'm sorry, it's a few times a minute. Can I suggest we just put a time limit on Justice Kennedy? Why don't we focus on the force clause? All right. So the force clause is the issue. And the problem with – and this Court has been doing what it calls categorical analysis for over 30 years. But the problem is that in doing the categorical analysis, in my view, the Court has actually not ever really changed what is required. And it's true that over the years, the Supreme Court has told us this is what we always meant. It seems to have been telling us, well, what you actually thought we always meant was never what we always meant. But we come down, and I think the important case, or a lot of the important cases – there's three really Supreme Court cases. Johnson won in 2010. Mathis, which establishes that in doing categorical analysis, what you're ever supposed to do is look at the actual conduct, the actual circumstances of the case. And then a third case is Moncrief v. Walter, which says when you're doing it correctly, what you're doing is you're not examining the text of the statute, which is where I think this Court has looked previously. What you're supposed to examine is the mental conduct that, based on case law or realistic possibility, would result in a conviction. And that's what has never been done. And so that's, in our view, where the Court's precedents are incorrect. So if you look at bank robbery, what you have, putting aside the first part of the argument, the subsection D for a bank robber is talking about bank robbing. So in bank robbing itself, all you have to have is intimidation. And over the years, intimidation has been defined in such a way. You can also find other cases in this Court that say that bank robbery is a crime of violence. There's many such cases. Does this Court just blindly overlook those cases to come to court this year? That's my answer. I think the Court needs to take stock of the fact that those cases have been undermined, and they've been undermined by Charles DeWolf, they've been undermined by Mathis, and they've really been undermined by Montgomery Feeholder. And the proper mode of analysis, I think, is suggested by this Court's decision in finale, where the Court overruled a 30-year-old precedent on involuntary manslaughter being a crime of violence and acknowledged that, you know what? In light of the way this analysis has come down over three decades, it's not any longer a crime of violence. And the Court then took its authority under Miller v. Cammeys, and when those precedents are undermined, a three-judge panel can recognize that, acknowledge it, and do something about it. Yeah, you're right. You're right about that. So let's just focus on the intimidation element. So why doesn't that element have been satisfied? I mean, this idea of continuing to search for certain conduct doesn't just mean the fact that you have to carry with it an implicit threat that others will be used if they were to resist. One could, I think, think this Court has concluded and say, this is a robbery and carries an implicit threat. But the focus has always been on what is the reaction of the person who hears that statement or receives that help, whereas the proper focus under categorical analysis is what was the defendant's purposeful conduct. Did the defendant purposely either use biophysical force, or threaten the use of biophysical force? And we know that that's not required because this Court has told us, in the Hopkins case, that a lengthy or at least a truly stated demand for money is going to be enough to establish defense. But in that sense of situation, I'm not sure that purpose is necessarily required, but certainly knowledge that an objective act that the defendant is engaging in is going to cause this reaction of the victim. And that is pressing to hear in the Hopkins scenario, right, that, yeah, the person might have said it with a smile or said it with a light tone of voice, but he knows that the assent on the ear or on the hearing person or on the other end of the recipient of that is going to proceed as an object or two of this person's name or house, right? And that's sufficient. But I don't think that it's sufficient because it doesn't focus on the purposeful, being treacherous in this case. And I think we've talked about that. We've talked about the close of the firearm. Well, yeah, it's not funny. It's hard to say. It's not as hard as it sounds to me. Sometimes I don't want to be sure how to say it, but do you think there could be a distinction between where there is a firearm involved and where there's not a suggestion of strong evidence? There's a decision to be made. My position is that bank robbery is not categorically a crime of violence, and our bank robbery under Section K is not categorically a crime of violence. And we know that from the Martinez case where this court held that the display of a toy gun is enough to establish that element. And so the intentional display, the other case that accepts that the accidental display is not enough. Right. You said vertical display. Yeah, vertical display. Oh, right. So that's what I'm saying. I mean, if the defendant, armed with something that looks like a real gun, intentionally uses that as a means of intimidating the defendant and complying, that certainly qualifies as a crime of violence. I don't know how you could – What more would you need? What you need is a – so you could have a situation where a person walks into a bank, makes a neutral, nonthreatening, by way of statement of substance, which is an indication that the person is supposed to hand over money. And if there is this neutral statement, hand over money, I'm just – I'm saying that there's something in the charge position. Somebody comes in and says, hand over money. Well, what Hopkins said was the evidence showed that Hopkins spoke calmly, made no threats, and was truly unruly. So if you walk into a bank and speak calmly, make no threats. We have a case in our office where the defendant was actually apologetic. It's not this case. But he said, I'm sorry, I had to be you. And he handed over a note, and nobody, including us, had any problem with saying that under this Court's precedence, that constitutes bank robbery. The problem is, is that we have this whole line of cases which have required less and less proof in order to establish that bank robbery is, and you're guilty of it. And we have the other line of cases in the Supreme Court saying that the categorical analysis requires more than just the conviction. But I'll turn it back to Jeff Sands first. Let's put it this way. It's discreet. It's a 13-year thing, right? And we're talking about over a number of times. Do I give you one more shot at your time of defense? I am a hard-time senior. And you're right. We don't run a 13-year sentence. It's a 13-year by itself. It's a crime of violence. But how do we not? It's an invisible display of a firearm. It can't by itself be a threat. Otherwise, what are all the stakes? You can't put a jury law in front of you. Why not put it in front of a gun? But putting it in front of a gun, if I remember, requires, this one will give you the true national language of a constituency. It says, whoever, in committing or in an attempt to commit any offense to find a substance they aim, assaults a person, or puts in jeopardy of life a person by the use of a dangerous weapon or device, shall be fined under the statute of liabilities. That's what I'm saying. It's not just a display. And certainly not the inadvertent display. We know that. It's not the inadvertent display. It's a simple display without any reference to it. Or you need to say, as your lawyer says, I'm here to get this money from you. Well, you don't need to say a whole lot to convey an implicit threat that if you don't comply, this thing is going to be used against you. I don't know how else one would interpret that. I would say that you have to take seriously what the Supreme Court has said and indicate that unless you can show that categorically the purposeful conduct of the defendant will always encompass what's required, that you don't have it as a categorical problem. I think that this, even under subsection P, you don't have to have an actual dangerous weapon. It's just something that appears public. I was on the calendar now when I had problems. You know, there was how we came out. But at least there the Massachusetts statute didn't require any harm, but didn't require any. There's no display of it at all. So you see a very different view. It's requiring some active deployment of the weapon as a means of assaulting or intimidating the victim. I think that's the last point I'll make. I think the mistake that the Court has made in the past, and it sounds like it's prepared to do again, is to focus on the effect of the victim on the other people, whereas the categorical analysis requires a focus on the defendant's purposeful conduct rather than on the effect of it. That's where the intimidation analysis is wrong, and it's also where the focus subsection D is wrong, because it doesn't focus on the defendant's purposeful conduct. It focuses on the effect of it. And you know that's not wrong because we have the case. This is the inadvertent display of the defendant of the weapon. If they are harmed, they won't. If they didn't mean to use the weapon to incriminate a person, they're not guilty of this crime. I know you're wrong on that point. Because you cannot be convicted of the D crime unless you have done it purposely. You know that certainly very well. Well, I would say in that Odom case, definitely it's done. It's one thing that recklessness is not enough, because if you wanted to say, that's what my inventory was telling me, that restraints mean that we'll get in a bag with a millimeter waistband and an inadvertent display, and it would be the very climate of recklessness. So at least in that part of it, it's in the equations that would really bring back to my contention that there's purposeful conduct. And I think it's just not categorically here in every case. And if it's not in every case, then categorically, if it's here, we can't be convicted of this. Okay, thanks very much. I want to get a different model. I'm going to start with the other video. Good morning, Your Honors. My name is Nathan Corden, and I'm the General Attorney for the United States. And several of the court's questions were getting towards, and I'd like to address what this case is about. And it's about armed bank robbery, under 2113A, Bank Robbery Statute, armed bank robbery. But armed bank robbery requires, as he so just goes on and on and on, and he couldn't get away with it. And you, I think, said it was 22 under 17, a case that you and other surrogates didn't deal with, just the 213A. Yes, there are several cases that dealt with 213A. Okay, but I just want to clear, if you're not asking us to examine this case just on the basis of that, which is an order made by a familiar owner, a decision based on 213A, and the reason why we cited those cases, that would be sufficient to affirm the offense, convictions, and denial, and defendant's duty to 55 motions. Because if bank robbery qualifies, large bank robbery with traditional help necessarily qualifies. But this court can certainly write a more narrow opinion focusing solely on the element of 2113D. But if you start out by saying this case is just an armed bank robbery case, I'm trying to get a better sense. If that's what you're asking us to do, just limit our analysis to 213. Yes, so that would be sufficient to affirm the district court's judgment in this case, and several of the panel's questions got to specifically Judge Saint's question about the fact that this is an additional element required on top of bank robbery. And this court held an odom that armed bank robbery requires the intentional design of firearms. And so our question got to what that communicates, and not solely on the receiving end of what an individual perceives behind the tailoring. Now, letting bank robber intentionally communicate by pulling out a gun during an armed bank robbery is one thing. You better hand over the money, or else there will be violence. And that intentional communication of a threat is fitting to meet the elements of, as Mr. Chisholm said, 924C3A, requiring the threat release of physical force. And under 28J, whether or not we syndicate numerous courts throughout the country that have addressed this issue in Post Johnson, have reaffirmed that both the 2113A bank robbery and armed bank robbery have a straightforward categorical matchup with the elements clause of 924C, such as 6 or 7 circuits. Well, if you include Hobbs Act robbery cases and bank robbery cases, I believe that this point in publishment of published decisions is 10 of 12 circuit courts in the published decisions. I believe it's six published decisions since Johnson 2 that held that either Hobbs Act robbery or 2113A bank robbery or 2113A and D armed bank robbery qualify. I think that's significant because we have held as a way we do our business that we will not have conflicts with other circuits unless there's a substantial reason why we should do so. But as we defer to a circuit, did you say we were deferring here to six circuits? Well, yes, Your Honor. In addition to that, these courts binding precedent under SELFA and rights also holds that 2113A and D armed bank robbery qualifies for crime of violence. My colleague cited the case of Willow v. Candy about interfeding authority, potentially giving the court a basis to overturn binding precedent. And I have it right here that requires interfeding higher authority that's clearly irreconcilable with those prior cases. And two different panels in this court have relied on that decision to say that SELFA and right have certainly not been overruled in those other circuit decisions. Also indicating that this court got it right and is correct in SELFA and rights in holding that bank robbery armed bank robbery qualified for the helm of this clause. And that would obviate, of course, this court's need to address the constitutionality of section 924C3B, which the government needs to gain since the new constitution despite this court's opinion in time. Unless the court has any other questions, we would rest our briefs here. That's great. Thank you, sir. So I think the case that is important to resolve this, most important, is Toxin I in 22. Because what Toxin I said is that the force clause requires physical force and does not encapsulate intellectual force or emotional force. So when you're talking about the effect that other people of seeing what appears to be a dangerous weapon or firearm, when you're really talking about emotional or intellectual force, you're not talking about the terms we use. Allowing physical force capable of causing physical injury is required by Toxin I. And I think that puts the proper context on this in terms of your question, Judge Palmas, about what other circuits have done. The truth of the matter is no other circuit, as far as I can tell, has defined bank robbery down as much as the Ninth Circuit has. And let's recall, there's a reason why they have every single case that said less and less is required to prove bank robbery. And a smart young man that's just like Mr. Tech hang up there saying for the government urging the court to do that. And they were urging the court to do that because what they wanted to do was uphold the conviction for bank robbery and avoid the Mr. Larceny, which is an included offense under the statute and has big consequences under the guidelines, particularly back when they were mandatory. So we're here with this crossroads between the court's prior pressing of bank robbery and what the category of unlawful record because the court was led here by the government. Now that it's time to pay the paper, as it were, they don't want to hear about it and they want to tell you about other circuits where bank robbery is defined a lot more restrictively than it is here. So I think that is the answer to the government's point. Thank you. Thank you very much. We'll be right back to the case which is tardy at least a bit.
judges: Wallace, Watford, Sands